IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC L. TOWNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:06cv1100-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

The plaintiff, Eric L. Towns ("Towns"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income benefits pursuant to Title XVI, 42 U.S.C. § 1381 *et seq.*, alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. Towns then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The Appeals Council's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

now before the court for review pursuant to 42 U.S.C. § 405(g) and § 1631(c)(3).  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to entry of final judgment by the United States Magistrate Judge.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  ADMINISTRATIVE PROCEEDINGS

Towns was 43 years old at the time of the hearing before the ALJ. (R. 327.) He is a high school graduate. (*Id.*) Towns' prior work experience includes working as a material handler, construction worker, orderly, and delivery driver. (R. 78, 95, 351-354.) Towns

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

alleges that he became disabled due to a heart valve implant, Coumadin therapy, chronic fatigue, depression, right-side carpal tunnel syndrome, blurred vision, and the loss of his left eye. (R. 77, 329-31; Doc. No. 12, p. 3.) Following the hearing, the ALJ concluded that Towns has severe impairments of status post carpal tunnel surgery, status post aortic valve replacement, status post left eye surgery, visual disturbances, and status post cut of left hand. (R. 20.) The ALJ found that Towns "retains the residual functional capacity to perform light work activity." (R. 23.) Relying on the testimony of the vocational expert, the ALJ concluded that there were a significant number of jobs in the national economy that the plaintiff could perform. (R. 24.) Accordingly, the ALJ concluded that Towns was not disabled. (*Id.*)

## IV. THE PLAINTIFF'S CLAIMS

As stated by Towns, he presents the following issues for the court's review:

(1)   The ALJ improperly rejected the opinion of plaintiff's long-term treating physician Dr. Refai.

(2)   The ALJ's residual functional capacity findings acknowledge a pain level noted by the vocational expert to preclude work.

(Doc. No. 12 at p. 6.)

## V. DISCUSSION

### A. Dr. Refai's Opinion

Towns asserts that the ALJ improperly discounted the opinion of Dr. Basel Refai, an internist at Russell Medical Center. Specifically, Towns argues that the ALJ erroneously

concluded that Dr. Refai was a "one-time evaluating source rather than a long-term treating physician." (Doc. No. 12, p. 5.) In addition, he argues that the ALJ should not have accorded more weight to the opinion of Dr. James Anderson, a non-examining medical expert, than to the opinion of his treating physician, Dr. Refai. (*Id.*, p. 6.)

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). However, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

The ALJ discounted Dr. Refai's opinion regarding the severity of Towns' impairments. Specifically, the ALJ found that "the opinion of Dr. Refai is inconsistent with the general evidence of record." (R. 21.) The ALJ further determined as follows:

> Dr. Refai restricted the claimant from climbing and from work around hazardous machinery [and] completed a pain questionnaire that stated that the claimant's chest wall pain was present to such an extent as to be a distraction from work and that physical activity greatly increased pain. While the claimant may experience pain, I find that the objective treating records do not reflect pain at the level that is disabling. Dr. Refai stated that the claimant had an American Heart Association

> Classification with Functional Capacity Class I. I note that Dr. Anderson testified that Class I indicated normal function of the heart with no limitations. Therefore, I give no weight to Dr. Refai's opinion as it is also inconsistent with the overall medical evidence of record. As finder of the facts, I must rely on medical opinions that are supported by objective medical evidence. I find that the opinions of doctors to whom the claimant was referred for one-time evaluations by his representative are not supported by objective medical evidence. I find that the opinions of doctors to whom the claimant was referred for one-time evaluations by his representative are not supported by any objective medical evidence, but are based upon their one-time evaluations and the subjective allegations of the claimant and are inconsistent with the general medical evidence of record including objective medical evidence by long-time treating physicians.

(*Id.*)

First, the court notes there are few references to Dr. Refai in the record. Emergency room records indicate that a Dr. "R" signed documentation indicating that he treated Towns' for his left eye injury on July 29, 2001. (R. 249.) Towns listed Dr. Refai as his primary physician on one nursing assessment sheet and one registration form at Russell Medical Center. (R. 230, 237.) In addition, laboratory results from August 13, 2003, identify Dr. Refai as Towns' "regular doctor." (R. 279.) These occasional references to Dr. Refai are insufficient to establish that Dr. Refai was Towns' long-term treating physician at the time he conducted a consultative examination of Towns on June 7, 2004. More importantly, Towns testified that he "didn't have a family physician after [he] c[a]me from surgery," that he "was just under Dr. Kwan and . . . Dr. George, cardiology," and that he did not begin seeking treatment from Dr. Refai until "right at 2004." (R. 337.) Thus, the ALJ's determination that Dr. Refai was not Towns' long-term physician is supported by substantial

6

evidence.

More importantly, the ALJ's determination that Dr. Refai's findings are inconsistent with the medical records is supported by substantial evidence.  Thus, whether Dr. Refai was Town's treating physician is immaterial.  During the June 7, 2004, consultative examination, Dr. Refai completed several questionnaires concerning Towns' functional capacity and pain level.  (R. 305-07.)  In the clinical assessment of pain form, Dr. Refai specifically noted that Towns suffers from chest wall pain and concluded that Towns' "pain is present to such an extent as to be distracting to adequate performance of daily activities or work," and that physical activity would "greatly increase[] pain and to such a degree as to cause distraction from tasks or total abandonment of tasks."  (R. 305-06.)  In the clinical assessment of fatigue/weakness form, Dr. Refai also assessed that physical activity would "greatly increase fatigue/weakness and to such a degree as to cause total abandonment of tasks."  (R. 307.)

The record demonstrates that, while Towns may have suffered from some chest pain after his aortic valve replacement surgery, his abilities were not so impaired that physical activity would cause him such pain or fatigue that he would become greatly distracted or altogether abandon tasks.  Although Towns testified that he takes Lortab "off and on" for his chest pain, the medical records indicate that he has only received prescriptions for pain medication upon discharge from the hospital after each surgery and that these prescriptions were not renewable.  In addition, there is no evidence in the medical record indicating that Towns consistently complained of chest pain.  Towns was advised by medical personnel to avoid work during the two or three month period after his open heart surgery on November

6, 2001 (R. 127); however, during a follow-up appointment on January 28, 2002, Dr. Stephen Kwan, a cardiovascular surgeon, noted that Towns would be able to return to work the following day. (R. 133-34.)  Additionally, on December 26, 2002, Dr. David George, a cardiologist, noted that Towns was "doing well from a cardiac standpoint" and that he reported "no chest pain." (R. 166.) The court therefore concludes that the ALJ's discrediting of Dr. Refai is supported by substantial evidence.

      Towns also asserts that the ALJ erred in relying on the testimony of Dr. Anderson, a non-examining physician, when discounting Dr. Refai's opinion.  Taken alone, the opinion of a non-examining physician does not constitute substantial evidence to support an administrative decision.  *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir 1990).  However, an ALJ does not err in relying on the opinion of the non-examining physician when that opinion does not contradict an examining physician's opinion. *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991).  In his analysis, the ALJ gave "substantial weight to the opinions of Dr. Anderson, Dr. Kwan, Dr. Young, Dr. George, Dr. Anz and Dr. Blendt regarding the claimant's functional abilities." (R. 22.) The ALJ specifically noted that "Dr. Refai stated that the claimant had an American Heart Association Classification with Functional Capacity Class I" and that "Dr. Anderson testified that Class I indicated normal function of the heart with no limitations." (R. 21.)  It is clear that Dr. Anderson's testimony concerning the American Heart Association's method of classification did not conflict with Dr. Refai's opinion or any other physician's opinion.  More importantly, however, a review of the ALJ's decision demonstrates that the ALJ conducted a thorough analysis of the

testimony and considered all of the objective evidence in reaching his decision. This court therefore concludes that the ALJ did not err in relying on Dr. Anderson's opinion.

## B.  The Questioning of the Vocational Expert

Towns asserts that the ALJ's findings are inconsistent with the testimony of the vocational expert. Specifically, Towns contends that, because the ALJ found that Towns suffers from "pain for 35 to 45 minutes at a time, three to four times a week" and the vocational expert testified that pain at a level of seven on a ten-point scale for this duration of time would be a significant impairment, the ALJ should have concluded that he is disabled. However, the ALJ's findings and the vocational expert's testimony must be viewed in the context of the entire record.

During the hearing, Towns testified that he suffers from chest pain for a duration of 25 to 45 minutes approximately three to four times a week. (R. 333, 338.) After hearing testimony from Towns and a medical expert, the ALJ obtained the testimony of a vocational expert to assist him in determining whether there were other jobs in the national economy that Towns could perform. When a claimant cannot perform a full range of work at a given exertional level, the preferred method of demonstrating job availability is through expert vocational testimony. *See Walker*, 826 F.2d at 1003.

During the ALJ's questioning of the vocational expert (VE), the following transpired:

ALJ: . . . Let's take [the] B11-F exhibit and let's change exertional limitations, somebody who can occasionally lift and carry 20 pounds, someone who can frequently lift and carry ten pounds, keep the standing, excuse me, walking with normal breaks to six hours in a normal eight-hour work day, also sitting six hours in a normal eight-hour work day. When it comes to pushing and

9

>   pulling let's assume someone who is limited in their upper extremity, right, to frequent and let's also, let's also assume someone who when it comes to manipulative limitations is limited to frequent right hand when it comes to handling gross manipulation. Could somebody with those limitations and restrictions do their past work?
>
> VE: No.
>
> ALJ: Any other jobs in the national and regional economy he or she could perform?
>
> VE: Yes, sir.
>
> ALJ: Essentially that's a light RFC so some limitations. The kind of jobs that would fit, things like hotel/motel clerk and for the light, unskilled incidence there are 1,800 in the State and 147,000 in the national economy. Sales clerk, light, unskilled, 3,800 statewide, 250,000 in the national economy. Cafeteria attendant in the light, unskilled range, 2,400 in the State of Alabama and 166,000 in the national economy.
>
> ALJ: Let's take the same RFC and this time, excuse me, let's assume somebody with a pain level of five. Pain level of five, three or four times a week, shortest duration, 35 minutes, longest 45, describe his chest pain. Any change as far as those other jobs?
>
> VE: No, sir.
>
> ALJ: Same light RFC at the pain level of seven. Would it eliminate those other jobs?
>
> VE: It would be a close call on that. A seven 35, 45 minutes and how many times a week?
>
> ALJ: Three to four times.
>
> VE: If it's on the job I think that would be a significant impairment. It could take him out.

(R. 356-57.)

After the hearing, the ALJ determined as follows:

10

> On consideration of the record, I find that the claimant retains the residual functional capacity to perform light work activity. I further find that the claimant also has pain for 35 to 45 minutes at a time, three to four times a week.
>
> At the hearing, I asked the vocational expert to identify work performed by the claimant in the past fifteen years, indicating the title of the job, and the skill and exertional level of each job . . . .
>
> The vocational expert was queried as to whether the above-described residual functional capacity would preclude the performance of any of the identified jobs. The vocational expert testified that the performance of all the jobs would be precluded. In turn, I find that the claimant does not have the residual functional capacity to perform any past relevant work. . . .
>
> As this claimant cannot perform a full range of light work, the vocational expert was instructed to assume a hypothetical individual of the claimant's age, education, and work experience and who had the residual functional capacity described above. The vocational expert was then queried as to whether there was other work in the region or nation that the hypothetical individual could perform. The vocational expert answered in the affirmative and provided a representative sample of such jobs, including: hotel/motel clerk (light/unskilled), 1,800 jobs in the regional economy, and 147,000 jobs in the national economy; sales clerk (light/unskilled) 3,800 jobs in the regional economy, and 250,000 jobs in the national economy; and cafeteria attendant (light/unskilled), 2400 jobs in the regional economy. . . .
>
> On consideration of the record, including the vocational expert's testimony, I find that the claimant has the residual functional capacity to perform jobs existing in significant numbers in the national economy. . . .

(R. 23-24.)

It is clear from a review of the transcript in its entirety that the ALJ's conclusion is not inconsistent with the vocational expert's testimony. During the hearing, the vocational expert

testified that pain at a level of seven would be a significant impairment which would preclude a claimant from working, but that pain up to a level of six would not prevent a claimant from work. Nothing in the record indicates that Towns complained of pain at the level of seven or that the ALJ made such a finding. Thus, the court concludes that the ALJ's determination that Towns "has pain for 35 to 45 minutes at a time, three to four times a week" and "retains the residual functional capacity to perform light work activity" is consistent with the evidence of record, including the vocational expert's testimony.[4]

## VI. Conclusion

Accordingly, the court concludes that the decision of the Commissioner should be affirmed this case dismissed with prejudice. The court will enter a separate final judgment.

Done this 16th day of August, 2007.

/s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[4] To the extent Towns contends that the ALJ did not properly reject his allegations of pain because the ALJ concluded that he suffered "pain for 35 to 45 minutes at a time, three to four times a week," his contention is unavailing. First, the court notes that Towns did not raise this contention as a separate issue. Secondly, Towns did not testify that he suffered pain at the level of a seven on a ten-point scale. Finally, it is clear that the ALJ found that Towns suffers from some pain but that Towns' "testimony of disabling pain and functional restrictions is disproportionate to the objective medical evidence." (R. 23.) This court has reviewed the medical record and concludes that the ALJ's finding is supported by substantial evidence.